❏ Original          ❏ ☐

CLERK'S OFFICE
A TRUE COPY
Apr 25, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Records and information, including location data, associated<br>with the cellular device assigned telephone number<br>262-389-1213, (Target Cell Phone), whose wireless provider is<br>Verizon, as further described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    **25-M-399 (SCD)** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____5-9-25_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for _30_ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____4-25-25. 9:30 am_____          *Stephen C. Dries* (signature)
*Judge's signature*

City and state:       Milwaukee, Wisconsin          Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

1.  Records and information associated with the cellular device assigned telephone number **262-389-1213**, referred to herein and in Attachment B as **Target Cell Phone**, with an unknown subscriber, used by Dallas D. SMITH, that is in the custody or control of Verizon Wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2.  The **Target Cell Phone**.

# ATTACHMENT B

## Particular Things to be Seized

### I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period from January 1, 2025, to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii.   This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.      Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Dallas SMITH (DOB 02/09/1988) and other unidentified subject(s) since January 1, 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon Wireless in order to locate the things particularly described in this warrant.



CLERK'S OFFICE
A TRUE COPY
Apr 25, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Records and information, including location data, associated with the cellular device assigned telephone number 262-389-1213, (Target Cell Phone), whose wireless provider is Verizon, as further described in Attachment A.

)
)
)
)
)
)

Case No. 25-M-399 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), and 843(b) | Distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offe |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MADDIE MORGAN (Affiliate)  Digitally signed by MADDIE MORGAN (Affiliate)
Date: 2025.04.24 12:29:21 -05'00'

*Applicant's signature*

Maddie Morgan, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means)*.

Date: 4-25-25

*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

I, Maddie Morgan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **262-389-1213 (Target Cell Phone).** The **Target Cell Phone's** service provider is Verizon Wireless ("Service Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.  The listed subscriber for the **Target Cell Phone** is unknown, but I believe the phone number to be used by Dallas D. SMITH.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application(s) by the United States of America for an order(s) pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of

pen registers and trap and trace devices (pen-trap devices) to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

4.     I am employed as an Investigator with the Ozaukee County Sheriff's Office and have been a law enforcement officer since December of 2020. I have been an Investigator for 6 months and have been assigned to conduct narcotics investigations throughout that time. I am also a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since March of 2025. I am currently assigned to the DEA Milwaukee District Office.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5.     As part of my duties as a DEA Task Force Officer, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

6.     I have participated in narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.  More specifically, my training and experience includes the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded; f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

7. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of

electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8. The facts in this affidavit come my personal participation in this investigation, and my review of: (a) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (b) information obtained from cooperating witnesses, confidential sources, and/or defendants, whose reliability is established herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b), have been committed by Dallas D. SMITH and other known and unknown individuals.  There is also probable cause to believe that the location

information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

12. Since April 2025, the Drug Enforcement Administration (DEA) has been conducting an investigation involving Dallas D. SMITH (DOB: XX/XX/1988) and other individuals who are believed to be involved in the distribution of methamphetamine/heroin in the Milwaukee area.

### A. Background

13. On January 9, 2025, Investigator Zachary Wilkens of the Oshkosh Police Department received information from a confidential source (CS) that an individual by the name of Willie EPPS (DOB: XX/XX/1987) was selling firearms and narcotics in the City of Oshkosh, Wisconsin. Investigator Wilkens conducted four controlled buys from Willie EPPS using a CS from January 8, 2025 to January 16, 2025, purchasing firearms and various narcotics including methamphetamine, cocaine, and fentanyl. Investigator Wilkens had a court-authorized GPS on EPPS' vehicle and monitored his activity from January 15, 2025 until January 27, 2025. On January 27, 2025, EPPS traveled to Milwaukee and parked near 5323 South 13th Street in the City of Milwaukee for approximately five minutes. Later in the same day, EPPS was stopped in

Fond Du Lac County and taken into custody. EPPS had almost 100 grams of methamphetamine and a small amount of fentanyl on his person when he was taken into custody. The same day, the Oshkosh Police Department executed a search warrant at EPPS' residence at 929 Wisconsin Street in the City of Oshkosh and located user amounts of methamphetamine, fentanyl, and cocaine.

14. On January 28, 2025, Investigator Wilkens interviewed EPPS at the Fond Du Lac County Jail. During a *Mirandized* interview, EPPS admitted that he bought drugs from a male in Milwaukee that had the Facebook name "Paperchasin Drew." Investigator Wilkens was able to positively identify the male as Dallas D. SMITH, in part, based on data from EPPS' GPS tracker. EPPS stated the day he got pulled over, he was on his way back home from Milwaukee where he had met with SMITH.

15. EPPS' adult criminal history includes convictions for resisting/obstructing an officer (three counts), disorderly conduct (domestic abuse—two counts, non-domestic abuse one count), felony-bail jumping (two counts), OWI with minor passenger, OWI (2nd), OAR (two counts), Interlock Device Tampering/Failure to install/Violate Court Order, Disorderly Conduct (repeater), OWI (3rd), and OWI/PAC (4th). I believe EPPS is credible and that his information is reliable. EPPS' statement was made against his penal interest and was not provided in hope of receiving any benefit (monetary compensation or judicial consideration). Additionally, some of EPPS' information was later corroborated through independent means. For example, EPPS provided the Facebook name of his Milwaukee methamphetamine supplier, and it was the same Facebook name provided by a separate cooperating subject (detailed below).

16. On April 14, 2025, Ozaukee County Sheriff's Office Deputy Michael Zilke conducted a traffic stop on a grey Saturn sedan for failing to stop at a stop sign in Saukville,

Wisconsin. The driver, Jessob DIEDERICH, was taken into custody after being found in possession of 168.2 grams of suspected methamphetamine. Deputy Zilke conducted a *Mirandized* interview with DIEDERICH, who admitted to purchasing the methamphetamine in Milwaukee from a black male with the Facebook name of "Paperchasin Drew." DIEDERICH stated the individual lives near S. 13th Street and Layton Avenue in the City of Milwaukee. He was not aware of the exact address but described the house location as two houses towards Layton Avenue from an apartment complex that is across the street from a Packer themed bar. DIEDERICH admitted that a few months ago, he purchased 17-18 pounds of methamphetamine from the same individual in Milwaukee. On April 14, 2025, Deputy Zilke notified Task Force Officer (TFO) Maddie Morgan of the traffic stop and the information DIEDERICH shared during his interview.

17. DIEDERICH's adult criminal history includes convictions for disorderly conduct (domestic abuse—four counts), Possession of THC (two counts), Theft, Battery, Disorderly Conduct (two counts), resisting/obstructing an officer (two counts), possession of narcotic drugs, felony-bail jumping (three counts), criminal trespass to dwelling, and manufacture/deliver amphetamine (10-50g)(PTAC). I believe DIEDERICH is credible and that his information is reliable. DIEDERICH's statement was made against his penal interest and was not provided in hope of receiving any benefit (monetary compensation or judicial consideration). Additionally, some of DIEDERICH's information was later corroborated through independent means. For example, DIEDERICH provided the Facebook name of his methamphetamine supplier, and it was the same Facebook name provided by EPPS. Further, case agents were able to review text message content from DIEDERICH's phone. As detailed below, this text conversation

corroborated that the user of the **Target Cell Phone** engaged in an apparent drug transaction shortly before DIEDERICH was arrested with drugs.

18. TFO Maddie Morgan located the Facebook page for "Paperchasin Drew" and was able to locate a video on that page that had a shed in the background. TFO Morgan located a residence (5283 S. 13th Street) with the exact shed depicted in that video and matching the description provided by DIEDERICH of his drug supplier's residence. TFO Morgan was able to verify that 5283 S. 13th Street was Dallas SMITH'S residence by checking Wisconsin Department of Corrections (WIDOC) records. SMITH's address was last updated with WIDOC on or about August 1, 2022. The residence is also approximately 150 feet from where Willie EPPS' GPS location data showed his vehicle was on the day that EPPS was taken into custody. In December 2018, SMITH was arrested by Milwaukee Police Department for Possession of Heroin with Intent, Possession of Narcotic Drugs, and Maintain Drug Trafficking Place. SMITH is currently on supervision through the Wisconsin Department of Corrections for Felon in Possession of a Firearm and Possession of Narcotic Drugs. I learned from WIDOC that SMITH is currently in absconder status from his supervision.

19. On April 17, 2025, TFO Morgan and Special Agent (SA) Tyler Owenby met with Jessob DIEDERICH at the Ozaukee County Jail. DIEDERICH consented to going through his cell phone and consented to a forensic download of his cell phone. DIEDERICH provided two phone numbers for Dallas SMITH, **262-389-1213 (Target Cell Phone)** and 262-402-2859, saved in his phone as "Plugs" and "Chad's Plug," respectively. DIEDERICH showed TFO Morgan and SA Owenby a conversation between DIEDERICH and SMITH using **262-389-1213 (Target Cell Phone)** from April 13, 2025, a few hours prior to DIEDERICH getting stopped by Ozaukee County Sheriff's Office. In these text messages, TFO Morgan observed: SMITH stated, "For

900$ I'll give u 5oz For the demo I'll give u 2oz Yea all together 7oz" to which DIEDERICH responded, "I don't need any hard tho maybe some down idk what I'd do with the ball of hard." Based on training and experience, TFO Morgan knows that "hard" is a common street name for crack cocaine. TFO Morgan also knows that "down" refers to a "downer" drug such as fentanyl, heroin, or benzodiazepines. DIEDERICH was arrested in possession of approximately 168 grams of methamphetamine, which is roughly 5.9 ounces. I believe this amount to be generally consistent with the quantities being discussed between DIEDERICH and SMITH in the above-described text exchange.

20. DIEDERICH stated to case agents that he has been purchasing various narcotics from SMITH for the past few months. He was shown a photograph of 5283 S. 13th Street and confirmed that was the residence where SMITH resided. He was shown a photograph of SMITH and confirmed that he was the individual DIEDERICH had been purchasing narcotics from and that SMITH was the individual with the Facebook name "Paperchasin Drew."

21. Case agent reviewed law enforcement database, which indicated telephone number **262-389-1213 (Target Cell Phone)'s** service provider is Verizon Wireless. I have used this same database in the past and found it to be reliable.

22. On April 17, 2025, case agents submitted an administrative subpoena to Verizon Wireless, the service provider regarding the telephone number **262-389-1213 (Target Cell Phone),** but as of this same date the results have not been returned. As such, the current subscriber of the **Target Cell Phone** is unknown at this time, but I believe the user to be Dallas SMITH.

23. Based on the above, I believe that the requested data for **262-389-1213 (Target Cell Phone)** to include prospective precision location data, pen register/trap and trace data, and

subscriber information will assist in locating SMITH (currently in absconder status with the Wisconsin Department of Corrections), and will aid in identifying any drug "stash" locations frequented by SMITH and any persons with whom SMITH is involved in drug trafficking (customers, co-conspirators, sources of supply, etc.)

## **TECHNICAL BACKGROUND**

24.     Case agents believe the **Target Cell Phone** whose service provider is Verizon Wireless (Service Provider), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of possession of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b).

25.     Based on my training and experience, I know that Verizon Wireless can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Verizon Wireless' network or with such other reference points as may be reasonably available.

### A.  Cell-Site Data

26.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."

Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

27. Based on my training and experience, I know that Verizon Wireless can collect cell-site data on a historical and prospective basis about the **Target Cell Phone.** Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

### B. E-911 Phase II / GPS Location Data

28. I know that some providers of cellular telephone service, including Verizon Wireless have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

29.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

30.     I also know that certain wireless providers, such as Verizon Wireless, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

31.     Based on my training and experience, I know that Verizon Wireless also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

32. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Verizon Wireless' network or with such other reference points as may be reasonably available.

## C. Pen-Trap Data

33. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## D. Subscriber Information

34. Based on my training and experience, I know that wireless providers such as the Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Verizon Wireless typically collect and retain information about their

subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

**AUTHORIZATION REQUEST**

35.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

36.     I further request that the Court direct the Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

37.     I also request that the Court direct the Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Verizon Wireless' services, including by initiating a signal to determine the locations of the **Target Cell Phone** on Verizon Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

38.     Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned telephone number **262-389-1213**, referred to herein and in Attachment B as **Target Cell Phone**, with an unknown subscriber, used by Dallas D. SMITH, that is in the custody or control of Verizon Wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. The **Target Cell Phone**.

## ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period from January 1, 2025, to present:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Dallas SMITH (DOB 02/09/1988) and other unidentified subject(s) since January 1, 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon Wireless in order to locate the things particularly described in this warrant.